**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

AUG 1 5 2006

Michael N. Milby, Clerk

| | |
|---|---|
| NOLAN RUDOLPH, Derivatively on Behalf of CYBERONICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT P. CUMMINS, PAMELA WESTBROOK, MICHAEL A. CHENEY, DAVID S. WISE, ANTHONY L. COELHO, KEVIN S. MOORE, REESE S. TERRY, STANLEY H. APPEL, ALAN J. OLSEN, GUY C. JACKSON, ALAN TOTAH, and MICHAEL STRAUSS,<br><br>Defendants,<br><br>and<br><br>CYBERONICS, INC.,<br>a Delaware corporation,<br><br>Nominal Defendant. | Case No. 4:06cv2671<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, CORPORATE WASTE, UNJUST ENRICHMENT, GROSS MISMANAGEMENT** |

Plaintiff, by his attorneys, submits this Verified Derivative Complaint (the "Complaint") against the Defendants named herein.

## NATURE OF THE ACTION

1.     This is a shareholder's derivative action brought for the benefit of Nominal Defendant Cyberonics, Inc. ("Cyberonics" or the "Company") against certain current and former members of its Board of Directors (the "Board") seeking to remedy Defendants' breaches of fiduciary duties and unjust enrichment.

2.      The claims asserted herein arise under federal securities law, and Texas state law for breach of fiduciary duty, unjust enrichment, gross mismanagement, and corporate waste.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 in that this Complaint states a federal question.   This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

4.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred in this district.   One or more of the Defendants either resides in or maintains executive offices in this district, and Defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

5.      Plaintiff Nolan Rudolph is, and was at all relevant times, a shareholder of Nominal Defendant Cyberonics. Nominal Defendant Cyberonics' principal executive offices are located at located at 100 Cyberonics Boulevard, Houston, TX.   The Company also has an office in Brussels, Belgium.   As of June 28, 2005, the Company has 24,957,775 shares of common stock outstanding.

6.      Cyberonics, Inc. (NASDAQ: CYBX) was founded in 1987 to design, develop and market medical devices for the long-term treatment of epilepsy and other

chronic neurological disorders using a unique therapy, vagus nerve stimulation (VNS). Stimulation is delivered by the VNS Therapy System, an implantable generator similar to a cardiac pacemaker. The VNS Therapy System delivers preprogrammed intermittent mild pulsed signals to the vagus nerve 24 hours a day. The Company's initial market is epilepsy, which is characterized by recurrent seizures. Epilepsy is the second most prevalent neurological disorder. The FDA approved the Cyberonics VNS Therapy System on July 16, 1997 for use as an adjunctive therapy in reducing the frequency of seizures in adults and adolescents over 12 years of age with partial onset seizures that are refractory to antiepileptic medications. The VNS Therapy System is also approved for sale as a treatment for epilepsy in all the member countries of the European Union, Canada, Australia and other markets. To date, more than 32,000 patients in 50 countries have been implanted with the device. These patients have accumulated in excess of 94,000 patient years of experience using this life-enhancing therapy. The VNS Therapy System was approved by the FDA on July 15, 2005 "as an adjunctive long-term treatment for chronic or recurrent depression for patients 18 years of age and older who are experiencing a major depressive episode and have not had an adequate response to four or more adequate antidepressant treatments." As part of FDA's approval order, Cyberonics is required to conduct a 450- patient post-market dosing study and a 1,000-patient, five-year patient outcome registry. The VNS Therapy System is approved for sale in the European Union and in Canada as a treatment for depression in patients with treatment-resistant or treatment intolerant major depressive episodes including unipolar depression and bipolar disorder (manic depression). VNS Therapy is at various levels of investigational clinical study as a

potential treatment for anxiety disorders, Alzheimer's disease, chronic headache/migraine and bulimia.

7.     Defendant Robert P. Cummins ("Cummins") is the Chairman of the Board of Directors, President and Chief Executive Officer ("CEO").  Based on his knowledge of material non-public information regarding the Company, Defendant Cummins sold 913,950 shares (approximately half of his overall holdings) of Cyberonics stock for proceeds of $27.94 million during the relevant period.

8.     Defendant Pamela B. Westbrook ("Westbrook") has served as the Company's Chief Financial Officer ("CFO") of Cyberonics since 1998.   Based on her knowledge of material non-public information regarding the Company, Defendant Westbrook sold 70,000 shares (approximately half of her overall holdings) of Cyberonics stock for proceeds of $2.34 million during the relevant period.

9.     Defendant Michael A. Cheney ('Cheney") has served as Senior Vice President of Marketing & Sales of Cyberonics since 2002.  Previously, Cheney served as Vice President and Managing Director of Cyberonics from 2001 until 2002.  Based on his knowledge of material non-public information regarding the Company, Defendant Cheney sold 74,161 shares (approximately 2% of his overall holdings) of Cyberonics stock for proceeds of $2.62 million during the relevant period.

10.     Defendant David S. Wise ("Wise") has served as Vice President, Secretary and General Counsel of Cyberonics since 2003.  During the relevant period, Wise participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

11.     Defendant Anthony L. Coelho ("Coelho") has served as a director of Cyberonics since March 1997.  Coelho also serves on the Company's Compensation Committee and Strategic Advisory Committee.  Coelho serves as the Chairman for the Nominating/Corporate Governance Committee.  Based on his knowledge of material non-public information regarding the Company, Defendant Coelho sold 25,700 shares (approximately 4% of his holdings) of Cyberonics stock for proceeds of $780,656.00 during the relevant period.

12.     Defendant Kevin S. Moore ("Moore") has served as a director of Cyberonics since 2004.   Moore also serves on the Company's Compensation Committee, Nominating/Corporate Governance Committee and the Strategic Advisory Committee.  During the relevant period, Moore participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

13.     Defendant Reese S. Terry, Jr. ("Terry") co-founded Cyberonics in December 1987 and served as Chairman of the Board and Chief Executive Officer of Cyberonics until February 1990, when he became Chairman of the Board and Executive Vice President.  He also served as Chief Executive Officer for a portion of 1995.  Terry resigned from his position as Executive Vice President in February 2000 and from his positions as Chairman of the Board and Secretary in June 2001. Currently, Terry serves on the Nominating/Corporate Governance Committee and is the Chairman of the Compensation Committee.  Based on his knowledge of material non-public information regarding the Company, Defendant Terry sold 526,300 shares

(approximately half of his holdings) of Cyberonics stock for proceeds of $10.73 million during the relevant period.

14.     Defendant Stanley H. Appel ("Appel") has served as a director of Cyberonics since 1996.  Appel serves on the Compensation Committee and the Nominating/Corporate Governance Committee.  Based on his knowledge of material non-public information regarding the Company, Defendant Appel sold 60,000 shares (approximately 2.4% of his holdings) of Cyberonics stock for proceeds of $1.89 million during the relevant period.

15.     Defendant Alan J. Olsen ("Olsen") has served as a director of Cyberonics since 1999.  Olsen also serves on the Audit Committee.  Based on his knowledge of material non-public information regarding the Company, Defendant Olsen sold 55,000 shares (approximately half of his overall holdings) of Cyberonics stock for proceeds of $1.88 million during the relevant time period.

16.     Defendant Guy C. Jackson ("Jackson") has served as a director of Cyberonics since 2003.  Jackson also serves as the Chairman of the Audit Committee.  During the relevant period, Jackson participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

17.     Defendant Michael J. Strauss ("Strauss") has been a director of Cyberonics since 1997.  Strauss also serves on the Company's Audit Committee.  Based on his knowledge of material non-public information regarding the Company, Defendant Strauss sold 37,500 shares (approximately one third of his overall holdings) of Cyberonics stock for proceeds of $979,120 during the relevant period.

18.     Defendant Alan Totah ("Totah") served as the Vice President of Regulatory Affairs and Quality Systems for the Company from February 2001 until his resignation on July 2006.     During the relevant period, Totah participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

19.     Defendants identified in ¶¶7, 11-17 are referred to as the "Director Defendants."  Defendants identified in ¶¶7-10 and 18 are referred to as the "Officer Defendants."  Defendants identified in ¶¶7-9, 11, 13-15 and 17 are referred to as the "Insider Selling Defendants."  Collectively, the Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

21.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  These acts include: 1) agreement to and/or acquiescence in Defendants' option backdating scheme; 2) willingness to cause Cyberonics to disseminate false Proxy Statements from 1999-2006, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received.  Because of their positions with Cyberonics, each of the Defendants were aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Cyberonics shareholders and the financial markets but failed to do so.

22.     Pursuant to Section 162(m) of the Tax Code, 26 U.S.C.§ 162(m), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: 1) the compensation is payable solely on account of the attainment of one or more performance goals; 2) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, 3) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and 4) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

23.    Between 1999 and 2006, Defendants concealed that the stock option grants were repeatedly and consciously backdated to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period.  Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, Plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company.  In the alternative, Plaintiff seeks to have all of the unexercised options granted to defendants from as early as 1999 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

24.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, *inter alia*:

      a.    exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

      b.    exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

      c.    exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

d.    exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

e.    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

25.    The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

(1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a)    transactions are executed in accordance with management's general or specific authorization;

(b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

26.    Cyberonics' Audit Committee Charter provides that the Audit Committee shall, *inter alia*:

a.    Review the Company's Forms 10-Q, 10-K, and where appropriate, registration statements under the Securities Act of 1933 prior to filing with the SEC and discuss with management and the independent auditors; and

b.   Review the Company's quarterly and annual financial statements, including any report or opinion by the independent auditors, prior to distribution to the public or filing with the SEC.

## FACTUAL ALLEGATIONS

27.   Throughout the relevant period, Defendants caused Cyberonics to grant them millions of stock options permitting them to buy Cyberonics stock for pennies on the dollar which they could in turn sell as the Company's stock price increased.  A stock option gives the holder the right to buy a stock at a certain price in the future. Companies usually set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price."  The strike price is usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

28.   At all times relevant hereto, certain of the Company's stock option grants are described below:

**Fiscal 1999 Option Grants**

29.   Defendants dated Cyberonics' fiscal 1999 option grants on or about March 6, 1999 at $8 per share – near the low of the month.  The stock traded as high as $9.88 per share in March 1999.  Defendant Cummins received 100,000 options at this price.

**Fiscal 2002 Option Grants**

30.   Defendants dated many of Cyberonics' FY 2002 option grants as of June 25, 2001 at $12.80 per share – the lowest price for that month.  The stock traded as high as $16.90 per share during that month.  Defendant Cummins and Westbrook received 150,000 and 15,000 options, respectively, at this price.

**Fiscal 2005 Option Grants**

31.     Defendants dated Cyberonics FY 2005 option grants as of June 15, 2004 at $19.58 per share immediately before the stock jumped to $34 per share in the next two days.  Defendants granted the options the same day after they learned of a favorable report from the FDA recommending the use of the Company's Vaus Nerve Stimulator in the treatment of depression. Defendant Cummins receive 150,000 options at this price.  Defendants Rudolph and Totah received 20,000 options at this price. Similarly, Defendant Westbrook received 12,650 options dated on or about August 18, 2004 at an exercise price of $13.88 per share.  By the time Westbrook filed her Form 4 reflecting these options on August 20, 2004, Cyberonics' stock was trading above $19.50 per share.

32.     Specifically, since at early as 1999, Defendants have caused the Company to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings (or understated its losses) as follows:

| Fiscal Year | Reported Operating Earnings (Loss In Millions) | Reported Basic Earnings (Loss) Per Share |
|---|---|---|
| 1999 | $(12.5) | $(0.72) |
| 2000 | $(3.1) | $(0.22) |
| 2001 | $(25.2) | $(0.97) |
| 2002 | $(26.1) | $(1.21) |
| 2003 | $5.2 | $0.22 |
| 2004 | $6.8 | $0.26 |

| 2005 | $(12.2) | $(0.51) |
| 2006 | $(60.7) | $(2.44) |

33. Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell Cyberonics stock worth millions that they obtained often by cashing in under-priced stock options:

| Defendant | Dates of Sales | Shares Sold | Proceeds Received |
|---|---|---|---|
| Appel | 02/05/98-02/10/05 | 60,000 | $1,893,588 |
| Cheney | 11/13/03-06/01/06 | 74,161 | $2,618,651 |
| Coelho | 11/24/03-02/14/05 | 25,700 | $780,656 |
| Cummins | 02/04/00-02/11/05 | 913,950 | $27,940,741 |
| Olsen | 01/09/04-01/05/06 | 55,000 | $1,879,207 |
| Strauss | 02/02/00-08/08/03 | 37,500 | $979,120 |
| Terry | 01/20/98-06/09/06 | 526,300 | $10,727,081 |

| Westbrook | 02/07/00-02/10/05 | 70,000 | $2,337,562 |
|-----------|-------------------|--------|------------|
| **TOTAL** | | **26,322,537** | **$604,745,606** |

34.    Pursuant to the terms of the Company's stock option plans, the exercise price of options must be no less than the closing price of Cyberonics stock on the date of grant.

35.    Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

36.    In a striking pattern that could not have been the result of chance, nearly each and every one of the foregoing stock option grants was dated just before a substantial rise in Cyberonics' stock price.  In addition, with the exception of a few option grants, each of the dates selected was at the lowest price level during the trading week in which the options were granted.

37.    At the behest of the Officer Defendants, the Compensation Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Cyberonics stock was lower than the market price on the actual grant dates.  This improper backdating, which violated the terms of the Company's stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the

Officer Defendants and improperly reduced the amounts they had to pay the Company upon exercise of the options.

## DISSEMINATION OF FALSE AND MISLEADING FINANCIAL STATEMENTS

38.    As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

     a.    violated the terms of the Company's shareholder-approved stock option plans;

     b.    violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

     c.    violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

     d.    produced and disseminated to Cyberonics shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

39.    The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

     a.    On or about September 27, 1999, the Company filed its fiscal Form 10-K with the SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K included Cyberonics' 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Cyberonics' compensation expense was understated and its net earnings were overstated.

     b.    On or about September 28, 2000, the Company filed its fiscal 2000 Form 10-K with the SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2000 Form 10-K was simultaneously distributed to

shareholders and the public. The fiscal 2000 Form 10-K included Cyberonics' 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Cyberonics' compensation expense was understated and its net earnings were overstated.

c.      On or about July 25, 2001, the Company filed its fiscal 2001 Form 10-K with the SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2001 Form 10-K included Cyberonics' 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Cyberonics' compensation expense was understated and its net earnings were overstated.

d.      On or about July 24, 2002, the Company filed its fiscal 2002 Form 10-K with the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2002 Form 10-K included Cyberonics' 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Cyberonics' compensation expense was understated and its net earnings were overstated.

e.      On or about July 18, 2003, the Company filed its fiscal 2003 Form 10-K with the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2003 Form 10-K included Cyberonics' 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Cyberonics' compensation expense was understated and its net earnings were overstated.

f.      On or about July 9, 2004, the Company filed its fiscal 2004 Form 10-K with the SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2004 Form 10-K included Cyberonics' 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Cyberonics' compensation expense was understated and its net earnings were overstated.

g.  On or about July 18, 2005, the Company filed its fiscal 2005 Form 10-K with the SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2005 Form 10-K included Cyberonics' 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Cyberonics' compensation expense was understated and its net earnings were overstated.

40.  The materially false and misleading Fiscal 1999-2005 Form 10-Ks described above were reviewed, prepared and/or endorsed by the Defendants. The 2003-2005 Form 10-Ks were signed by Defendant Westbrook in her capacity as the Company's CFO.

41.  The 1999-2005 Proxy Statements concealed Defendants' option backdating scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between 1999 and 2005. In fact, it was not until Merrill Lynch's report that shareholders learned that the Proxy Statements which they had relied upon for years were false and misleading. Defendants have been unjustly enriched at the expense of Cyberonics, which has received and will receive less money from the Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

42.  The Officer Defendants breached their fiduciary duties by:

a.  colluding with the Director Defendants to backdate stock option grants;

b.  colluding with the Director Defendants to violate GAAP;

      c.     colluding with the Director Defendants to violate GAAP and Section 162(m);

      d.     colluding with the Director Defendants to produce and disseminate to Cyberonics shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

      e.     colluding with the Director Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

43.     The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit themselves at the expense of the Company.

44.     The Committee Defendants breached their fiduciary duties by:

      a.     colluding with the Officer Defendants to backdate stock option grants;

      b.     colluding with the Officer Defendants to violate GAAP and Section 162(m);

      c.     colluding with the Officer Defendants to produce and disseminate to Cyberonics shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

      d.     colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

45.     The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Individual Defendants at the expense of the Company.

46.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in

damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur, loss of funds paid to the Company upon exercise of options, costs and expenses incurred connection with the Company's restatement of historical financial statements, and costs and expenses incurred in connection with the SEC's investigation of the Company.

## DEMAND WOULD BE FUTILE

47.   Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress Defendants' breaches of fiduciary duties and unjust enrichment.

48.   Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

49.   As a result of the facts set forth herein, Plaintiff has not made any demand on the Cyberonics Board of Directors to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

50.   The Board is composed of nine directors (one position is currently vacant): Defendants Cummins, Coelho, Moore, Terry, Appel, Olsen, Jackson, and Strauss.  The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

> a.   Defendant Cummins is not considered an independent director of FoxHollow.   Defendant Cummins is beholden to FoxHollow because of his employee status as President and CEO of the

Company.   Because of this, it is reasonable to conclude that demand on Defendant Cummins is futile.

b.      Pursuant to a letter agreement dated March 28, 1997, The Clark Estates, Inc. is entitled to designate one person whom it wishes to have appointed to serve on the Company's Board of Directors. This right last for as long as The Clark Estates retains at least 600,000 of the aggregate of 901,408 shares of common stock purchases on such date by parties affiliated with The Clark Estates.  On January 13, 2004, The Clark Estates exercised its right to designate a member of the Company's Board of Directors and named its representative, Defendant Moore, President of The Clark Estates.    Because of Defendant Moore's interrelated business relationship, demand on Defendant Moore is futile.

c.      In order to bring this suit, a majority of the Directors of Cyberonics would be forced to sue themselves and persons with whom they have extensive and personal entanglements, which they will not do, thereby excusing demand.

d.      Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders.

e.      Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

f.      The acts complained of constitute violations of the fiduciary duties owned by Cyberonics' officers and directors and these acts are incapable of ratification.

51.    Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

## ACTION AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

52.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

53.    Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

54.    The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Cyberonics common stock.

55.    As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### ACTION AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT

56.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though set forth herein.

57.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

58.    The 1999-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that certain of the Defendants

were causing Cyberonics to engage in an option backdating scheme, a fact that Defendants were aware of and participated in from at least 1999.

59.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

60.     The misrepresentations and omission in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

61.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT III

### ACTION AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT

62.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though set forth herein.

63.     The Defendants, by virtue of their positions with Cyberonics and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Cyberonics within the meaning of §20(a) of the Exchange Act. They had the power and influence and exercise the same to cause Cyberonics to engage in the illegal conduct and practices complained of herein.

## COUNT IV

### AGAINST THE INDIVIDUAL DEFENDANTS

I:\Cyberonics\Derivative\Pleadings\Complaint.doc            22

**FOR BREACH OF FIDUCIARY DUTY**

64.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

65.     As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

66.     As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

> a.     colluding with the Committee Defendants to backdate stock option grants;
>
> b.     colluding with the Committee Defendants to violate GAAP and Section 162(m);
>
> c.     colluding with the Committee Defendants to produce and disseminate to Cyberonics shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and
>
> e.     colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

67.     The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit themselves at the expense of the Company.

68.     The Committee Defendants breached their fiduciary duties by:

> a.     colluding with the Officer Defendants to backdate stock option grants;
>
> b.     colluding with the Officer Defendants to violate GAAP and Section 162(m);

c.      colluding with the Officer Defendants to produce and disseminate to Cyberonics shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.      colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

69.     The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

70.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur, loss of funds paid to the Company upon exercise of options, costs and expenses incurred in connection with the Company's restatement of historical financial statements, and costs and expenses incurred in connection with the SEC investigation of the Company.

## COUNT V

## AGAINST THE OFFICER DEFENDANTS FOR UNJUST ENRICHMENT

71.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

72.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

73.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

## COUNT VI

## GROSS MISMANAGEMENT AGAINST ALL DEFENDANTS

74.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

75.     Defendants had a duty to Cyberonics and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Cyberonics.

76.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Cyberonics in a manner consistent with the duties imposed upon them by law.   By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Cyberonics' affairs and in the use and preservation of Cyberonics' assets.

77.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Cyberonics to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Cyberonics, thus

breaching their duties to the Company.  As a result, Defendants grossly mismanaged Cyberonics.

78.     By reason of the foregoing, Cyberonics has been damaged.

## COUNT VII

## CORPORATE WASTE AGAINST ALL DEFENDANTS

79.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

80.     By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Cyberonics to waste valuable corporate assets.

81.     As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT VIII

## AGAINST THE INSIDER SELLING DEFENDANTS FOR INSIDER SELLING AND MISAPPROPRORIATION OF INFORMATION

82.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

83.     At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Cyberonics common stock on the basis of such information.

84.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a

proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Cyberonics common stock

85.     At the time of such sales, that information was not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Cyberonics shares at that time.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

B.     Ordering the Individual Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.     Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

DATED: August 14, 2006

Respectfully submitted,

By: _____

William B. Federman, TBN 00794935
Attorneys for Plaintiff
FEDERMAN & SHERWOOD
120 North Robinson, Suite 2720
Oklahoma City, OK 73102
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
wfederman@aol.com


Marc Henzel
LAW OFFICES of MARC HENZEL
273 Montgomery Ave., Suite 202
Bala Cynwyd, PA 19004
Telephone:   (610) 660-8000
Facsimile:    (610) 660-8080

## VERIFICATION

I, Nolan Rudolph, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of **CYBERONICS INC (NasdaqNM:CYBX)** and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

June 30, 2006
Date

Nolan Rudolph
Signature