IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NOLAN RUDOLPH, Derivatively on Behalf of CYBERONICS, INC. | } } } | |
| Plaintiff | } } } | |
| v. | } } | CIVIL ACTION NO. H-06-2671 |
| ROBERT P. CUMMINS, PAMELA WESTBROOK, MICHAEL A. CHENEY DAVID S. WISE, ANTHONY L. COELHO KEVIN S. MOORE, REESE S. TERRY, STANLEY H. APPEL, ALAN J. OLSEN, GUY C. JACKSON, ALAN TOTAH, and MICHAEL STRAUSS, | } } } } } } } } } | |
| Defendants | } } | |
| and | } } | |
| CYBERONICS, INC., a Delaware corporation, | } } | |
| Nominal Defendant | } | |

## MEMORANDUM OPINION & ORDER

Pending before the court is Nominal Defendant Cyberonics, Inc.'s ("Cyberonics's") motion to stay the proceedings in this matter (Doc. 21). Plaintiff Nolan Rudolph ("Rudolph") opposes this motion (Doc. 23). Cyberonics filed a reply (Doc. 27), to which Rudolph has filed a surreply (Doc. 28). The real defendants in interest, Robert P. Cummins, Pamela Westbrook, Michael A. Cheney, David S. Wise, Anthony L. Coelho, Keven S. Moore, Reese S. Terry, Stanley H. Appel, Alan J. Olsen, Guy C. Jackson, Alan Totah, Richard Kuntz, Richard L. Rudolph, David Erinakes, and Michael Strauss (collectively "Individual Defendants") have been served, but have not yet appeared. For the reasons explained below, the court ORDERS that Cyberonics's motion to stay is GRANTED.

I.    <u>Background and Relevant Facts</u>

    In August 2006, Rudolf, as a purported shareholder of Delaware corporation, Cyberonics, filed the current action, alleging irregularities in connection with stock options granted to certain officers and directors of Cyberonics.  The Individual Defendants are current and former directors and officers of Cyberonics.  In his amended complaint (Doc. 18), Rudolph asserts six causes of action: (1) against the Individual Defendants for making false or misleading proxy statements in violation of SEC Rule 14a-9,[1] promulgated under Section 14(a) of the Securities Exchange Act of 1934, as amended 15 U.S.C. § 78n(a), (¶¶ 86-92) ("Count I"); (2) against the Individual Defendants for breach of fiduciary duty (¶¶ 93-101) ("Count II"); (3) against the "officer defendants" for unjust enrichment by their receipt and retention of backdated stock options (¶¶ 102-05) ("Count III"); (4) against all defendants for gross mismanagement (¶¶ 106-111) ("Count IV"); (5) against all defendants for corporate waste (¶¶ 112-15) ("Count V"); and (6) against the "insider selling defendants" for insider trading and misappropriation of information (¶¶ 116-20) ("Count VI").  Count I claims to be made "individually and on behalf of similarly situated shareholders," while Counts II-VI are brought "derivatively on behalf of Nominal Defendant Cyberonics."  *Id*.

    Cyberonics never authorized Rudolph to file suit on its behalf.  In November 2006, Cyberonics's Board of Directors ("Board") commissioned a special litigation committee ("SLC") "to investigate, analyze, and evaluate the derivative claims" asserted in this and other lawsuits.  *See* Form 8-K, Item 8.01 (Doc. 21 Ex. 1).  The Board appointed Hugh M. Morrison ("Morrison") to head the SLC.  Morrison is an independent director, who joined the Board on November 9, 2006,

---

[1] 17 C.F.R. § 240.14a-9(a) ("No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.").

shortly before the SLC was formed. Cyberonics requests a stay of the current proceedings pending a determination by the SLC on whether it is in the company's best interest to continue the derivative litigation.

II.     Law

Under Delaware law,[2] a properly formed SLC is generally entitled to a stay of derivative litigation for the reasonable period of time necessary to complete its investigation. *See Abbey v. Computer Commc'ns Tech. Corp.*, 457 A.2d 368, 375-76 (Del. Ch. 1983); *In re Oracle Corp. Derivative Litig.*, 808 A.2d 1206, 1211 (Del. Ch. 2002); *see also St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, No. 06 Civ. 688, 2006 U.S. Dist. LEXIS 72316, at *2 (S.D.N.Y. Oct. 4, 2006) (applying Delaware law).[3] There is a narrow exception, however, if it is clear from the stay application that the committee's later decision to terminate litigation will not withstand scrutiny. *See Biondi v. Scrushy*, 820 A.2d 1148, 1165 (Del. Ch. 2003). Such an exception is found only in "unusual circumstances," as in a case where the committee is "obviously biased." *St. Clair*, 2006 U.S. Dist. LEXIS 72316, at *2. Some courts also consider the extent of time and judicial resources already expended in the proceeding. *See, e.g., In re UnitedHealth Group Inc. S'holder Derivative Litig.*, No. 06-cv-1216, 2007 U.S. Dist. LEXIS 18062, at *8-9 (D. Minn. March. 14, 2007).

---

[2] To the extent that state law is consistent with federal policy, federal courts should apply state law in deciding the power of corporate directors to discontinue shareholder derivative suits alleging violations of federal law. *Burks v. Lasker*, 441 U.S. 471, 478-79 (1979); *In re Sunrise Securities Litig.*, 916 F.2d 874, 879 (3d Cir. 1990). The parties agree that the law of Delaware, the state of Cyberonics's incorporation, governs whether a stay is appropriate. *See Hollis v. Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000) (noting that, in Texas, "the internal affairs of the foreign corporation, 'including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares,' are governed by the laws of the jurisdiction of incorporation" (quoting Tex. Bus. Corp. Act Ann. art. 8.02A)).

[3] This rule also finds its genesis in the decision of *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1980), which, after approving the use of a SLC, laid out the framework for analyzing a SLC's decision on whether to pursue litigation (in the context of a motion to dismiss) a shareholder derivative suit. Here, the analytical framework of *Zapata* is only tangentially related because the SLC has yet to make a decision and no motion to dismiss is pending before the court.

III.   <u>Analysis</u>

   Rudolph claims that Cyberonics "belatedly" formed the SLC three months after he filed suit "to have a stratagem for delaying its day of reckoning." Pl.'s Br. 4 (Doc. 23). Thus, he argues, even if his derivative claims (Counts II-VI) potentially fall within the SLC's power of control, those counts should not be stayed. With respect to Count I, Rudolph asserts that his action for false or misleading proxy statements is brought directly on behalf of himself and similarly situated shareholders and is therefore neither derivative nor within the realm of the SLC's control, so a stay of this claim is not appropriate. The court discusses the issues in turn.

   Although discretionary, the stay of derivative shareholder claims pending a recommendation from the SLC finds strong support in Delaware case law. *See St. Clair*, 2006 U.S. Dist. LEXIS 72316, at *3. Here, the Plaintiff has not overcome the presumption that a stay should issue for the derivative claims alleged in Counts II-VI. The formation of the SLC within four months of Rudolph filing suit does not indicate that the SLC is biased or otherwise lacks independence. Indeed, Cyberonics began its inquiry into its stock option practice by conducting an internal investigation with independent counsel even before Plaintiff filed suit. The motion to stay is the first dispositive motion the parties have asked the court to address, so there has not been an undue amount of time or resources devoted to this proceeding. Finally, Rudolph's concern that Cyberonics's request for a stay is only a "stratagem for delay" is remedied by imposing a reasonable time limit on any stay the court may issue. Therefore, the court will stay the derivative claims in Counts II-VI pending the SLC's recommendation on whether to proceed, but the stay is subject to the reasonable time limits articulated herein.

   The Section 14(a) claim in Count I, on the other hand, must be assessed independently, beginning with a determination of whether this "direct" claim is in fact direct or derivative. Violations under Section 14(a) and of Rule 14a-9 may be either direct or derivative. *J.*

*I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964).  Courts are less than precise in articulating standards to properly assess the distinction between direct and derivative claims under Section 14(a) and Rule 14a-9.  *See* Tim Oliver Brandi, Comment, *The Strike Suit: A Common Problem of the Derivative Suit and the Shareholder Class Action*, 98 DICK. L. REV. 355, 365 (1993).[4]  Nevertheless, the Supreme Court in *Borak* appears to have considered the nature of the injury alleged under Section 14(a), as indicated in its discussion of the derivative Section 14(a) action: "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage done the shareholder."  377 U.S. at 432.  Here, Plaintiff's amended complaint provides little guidance on the nature of the injury alleged.  Initially, he claims that "revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policy."  Pl.'s Am. Compl. ¶ 91 (Doc. 18).  This allegation indicates that the shareholders' voting rights have been impaired, which suggests that the shareholders have been damaged and that the claim is direct.  In the very next paragraph, however, Plaintiff asserts that "[t]he *Company* was damaged as a result of the

---

[4] One problem may stem from a lack of clarity in whether courts should look to state or federal law in resolving the direct/derivative dichotomy.  In *Burks v. Lasker*, the Supreme Court held that, as a matter of federal law, courts should apply state law governing the authority of independent directors to discontinue a derivative suit alleging violations under federal statutes to the extent such law is consistent with the federal policies. 441 U.S. at 486.  The Court reaffirmed this approach in *Kamen v. Kemper Financial Services, Inc.* when it held that the scope of the demand requirement should be assessed under state law because it involved principles of corporate governance and did not impede the regulatory objectives under the federal statute under which the derivative action was brought. 500 U.S. 90, 108-09 (1991).  The Court further noted that,

> [W]here a gap in the federal securities laws must be bridged by a rule *that bears on the allocation of governing powers within the corporation*, federal courts should incorporate *state* law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute.

*Id*. at 108 (emphasis added).  Neither *Burks* nor *Kamen* addresses which law applies to determine whether a claim arising under a federal statute is derivative in the first place.  Although the direct/derivative inquiry and Section 14(a) involve corporate law principles, they do not "bear on the allocation of governing powers within the corporation," such as the shareholder demand requirement.  Therefore, the court concludes that federal common law governs the analysis of whether a shareholder is asserting a direct or derivative claim under Section 14(a).

material misrepresentations and omissions in the Proxy Statements." *Id.* ¶ 92 (emphasis added). By purporting to bring a claim for damages suffered by the corporation, Plaintiff has asserted a classical derivative action. As a result, the court will treat Count I as asserting both a direct and a derivative claim under Section 14(a) for the purposes of whether to issue a stay.

The court concludes that Count I, in its entirety, should be stayed. To the extent Plaintiff alleges a derivative Section 14(a) claim, the court agrees with the reasoning in *St. Clair* that a derivative Section 14(a) claim is subject to the demand requirement and, consequently, to the SLC's request for a stay. *See* 2006 U.S. Dist. LEXIS 72316, at *4 (discussing and ultimately rejecting that Section 14(a) derivative claims are "special species of derivative claims" not subject to the demand requirement and the business judgment rule under Delaware law); *see also In re Computer Sciences Corp. Derivative Litig.*, No. CV 06-05288, 2007 U.S. Dist. LEXIS 25414, at *13 n.4 (discussing *St. Clair* and finding more persuasive the cases that hold the demand requirement applicable to derivative Section 14(a) claims under Delaware law). To the extent Plaintiff alleges a direct Section 14(a) claim, Count I should still be stayed for efficiency purposes. A district court, in its discretion, may stay proceedings before it for docket control purposes or in the interest of justice. *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). It is undisputed that five out of the six claims are derivative and subject to the SLC's investigation. Having already determined that a stay is appropriate as to these claims, it is inefficient to allow one claim, whether direct or derivative, to proceed. Moreover, Plaintiff has not demonstrated that he will suffer any prejudice, at this early stage of the proceedings, from a brief stay of the entire cause of action. Therefore, Count I shall be stayed pending resolution by the SLC on whether to pursue the derivative portion of the claim.

An indefinite stay, however, is not appropriate. While a district court has ample latitude to stay proceedings before it for docket control purposes or in the interest of justice, "stay

orders will be reversed when they are found to be immoderate or of an indefinite duration." *Id*. Indeed, Delaware law limits the length of a stay to a "reasonable period of time." *St. Clair*, 2006 U.S. Dist. LEXIS 72316, at *2. This limitation is especially critical where, as is the case here, the party opposing the stay accuses the movant of using the SLC as a dilatory tactic. Moreover, in making its request, Cyberonics has not provided the court with any indication of the length or scope of its investigative efforts up to this point. Nor has it provided an estimated time table for its final determinations regarding whether derivative claims are in the best interest of the company. The court, therefore, imposes a limited stay in this proceeding, to expire 90 days from entry of this order. Should the Defendants require additional time to investigate, a pleading must be filed with the court detailing the progress made in completing the SLC investigation. An extension of the stay will only be allowed if the Defendants demonstrate a good faith effort in their investigatory pursuits and the court is satisfied that the stay is not being sought for the purposes of undue delay.

Plaintiff has also requested that limited discovery should be allowed to proceed should a stay be imposed. The court finds that permitting discovery to move forward would undermine the very purpose of issuing the stay, which is to allow the SLC an opportunity to make its own determination, unhampered by the burdens of litigation, on whether it is in the best interest of the Cyberonics to pursue the derivative litigation. As the court in *Abbey v. Computer Commc'ns Tech. Corp.* noted,

> If *Zapata* is to be meaningful, then it would seem that such an independent [special litigation] committee, once appointed, should be afforded a reasonable time to carry out its function. It would likewise seem reasonable to hold normal discovery and other matters in abeyance during this interval. If a derivative plaintiff were to be permitted to depose corporate officers and directors and to demand the production of corporate documents, etc. at the same time that a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation to permit the suit to go forward, the very justification for the creating of the litigation committee in the first place might well be subverted. Likewise, in

>effect, it would likely amount to simultaneous discovery of the same persons and materials by two separate sources, both allegedly acting on behalf of the corporation.

457 A.2d at 375.  The court further finds that Plaintiff's "direct" Section 14(a) claim implicates the same policy concerns and should likewise be stayed.

IV.     Conclusion

Accordingly, it is hereby

**ORDERED** that this cause of action, including all discovery, is **STAYED** pending a decision of the SLC, or, if a decision has not previously issued, for ninety (90) days following entry of this order.

SIGNED at Houston, Texas, this 19th day of April, 2007.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE